UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

STEVEN GRANGER,        )
                    )
        Movant      )
v.                  )  2:11-cr-00139-DBH-2
                    )  2:13-cv-00074-DBH
                    )
UNITED STATES OF AMERICA, )
                    )
        Respondent   )

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Steven Granger[1] has filed a timely motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.  (Motion, ECF No. 166.)  Pursuant to a written plea agreement, Granger pleaded guilty to conspiracy to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846.[2]  (Indictment, ECF No. 21; Agreement to Plead Guilty (With Stipulations and Appeal Waiver) (Plea Agreement), ECF No. 83.)  He was convicted and sentenced to a term of imprisonment of 24 months followed by three years of supervised release.  (Judgment, ECF No. 132.)  Granger argues that his attorney provided ineffective assistance of counsel at the sentencing hearing by (1) failing to review and submit medical records that would have justified a sentence served partly or completely in home confinement rather than prison; (2) failing to explain to the court that Granger's criminal behavior was the result of a serious drug addiction, which Granger argues would have justified

---

[1]      According to the revised presentence investigation report, Granger spells his first name Stephen rather than Steven.  I retain the spelling as originally used in the caption although I have no reason to doubt that the correct spelling is Stephen.

[2]      Granger was indicted for a violation of 21 U.S.C. §§ 841(b)(1)(C) and 846.  The judgment against Granger cites those statute sections, and also 21 U.S.C. § 841(a)(1).  In the indictment, section 841(a)(1) is cited only in relation to Count II of the indictment, which does not pertain to Granger.

an additional downward departure from the sentencing guidelines; (3) failing to submit all available positive character reference statements; and (4) failing to comply with Granger's request that he file an appeal.  In addition, Granger argues that his sentence of twenty-four months of imprisonment constitutes cruel and unusual punishment and he is currently being deprived of medical treatment for serious medical conditions.  I recommend that the court deny the motion without an evidentiary hearing.  I recommend that the denial be with prejudice as to the ineffective assistance claims but without prejudice as to the prison condition claims.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the crime, derived from the uncontested government's version and the uncontested revised presentence investigation report (PSI Report), are as follows: On July 25, 2011, Granger was at a co-conspirator's house in Lewiston during a controlled delivery of a United States Postal Service package of 100 30-milligram oxycodone pills.  Granger made a post-Miranda statement to agents that he had ordered oxycodone from a supplier in Florida.  The intercepted parcel was the last of 44 shipments[3] of oxycodone sent to Granger or a co-conspirator between November 2010 and July 2011.  Over this time, Granger had collected the packages at various locations in the greater Lewiston area, then distributed some of them to other persons for further distribution.  Granger would obtain proceeds from the sale and pay the Florida supplier, often by wiring money.

According to the PSI Report, a co-conspirator reported that Granger asked him to receive parcels and gave him free oxycodone pills in exchange.  During about that same period, Granger sent over $24,000 to the Florida supplier.  Granger agreed with the PSI Report that he was responsible for a total drug quantity of 117 grams of oxycodone.

---

[3]     The presentence investigation report (PSI Report), which Granger agreed at the sentencing hearing was accurate, stated that Granger would be held accountable for 39 shipments.

2

Granger had no prior criminal history.  The government agreed that addiction "was the driving force" behind Granger's involvement in drug dealing.  (Sentencing Transcript (S. Tr.) at 29.)  Granger states that his involvement with oxycodone began when it was prescribed to him in 2007 for chronic pain, following two major abdominal surgeries for diverticulitis in 2006 and 2007.  The dosage was doubled in 2009.  Granger states that the history of his chronic pain goes back to 1995, when he was in a serious automobile accident.  The presentence report indicated that a psychologist who treated Granger from 2008 to 2010 diagnosed generalized anxiety disorder, post-traumatic stress disorder, and pain disorder associated with both psychological factors and general medical condition.  Granger tested positive for cocaine, marijuana, and hydrocodone in May 2009, and he had tested positive for marijuana several months prior to that.  The doctor who originally prescribed him oxycodone discharged him based on the positive drug tests, and his primary care physician recommended that he go off all narcotics.

Granger and his co-defendants were indicted in August 2011.  Granger has been represented by the same counsel since his arraignment.  At the arraignment, Granger pleaded not guilty and was released on a personal recognizance bond.  Granger entered a detoxification program at Mercy Hospital in November 2011.  He was placed on suboxone which continued at the time of the presentence report in July 2012, and he participated actively in various hospital treatment programs and Alcoholics Anonymous.

Granger pleaded guilty in May 2012, pursuant to a plea agreement.  Under the agreement, the government recommended a three-level offense reduction for Granger's acceptance of responsibility, and Granger waived his right to appeal either the guilty plea or any sentence with a term of imprisonment that did not exceed 60 months.  (Plea Agreement at 2-3.)  The agreement states:

4. <u>Appeal Waivers</u>.  Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, Defendant waives the right to appeal the following:

A. Defendant's guilty plea and any other aspect of Defendant's conviction in the above-captioned case; and

B. A sentence of imprisonment that does not exceed 60 months.

Defendant's waiver of his right to appeal shall not apply to appeals based on a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

The number of months mentioned in this paragraph does not necessarily constitute an estimate of the sentence that the parties expect will be imposed.

(Plea Agreement at 3.)  Granger responded affirmatively to the court's inquiry as to whether he understood that he would have "virtually no right of appeal" from his conviction.  (Plea Transcript (P. Tr.) at 11.)  The court explained:

Ordinarily you would have the right to appeal your sentence or the sentencing procedures or any error that I might make in these guilty plea proceedings by taking your case to a higher court.  But you're agreeing here not to appeal your guilty plea or your conviction, and you're also agreeing that you won't appeal your sentence if it's not over 60 months.  In other words, if I sentence you at 60 months or less, I am the last judge in your case and you're agreeing that you'll not be able to overturn what I do.  Do you understand?

(P. Tr. at 16.)  Granger replied, "Yes."

At the change of plea hearing, Granger's attorney told the court that Granger "had a very bad habit, and he has gone through rehab and is taking [s]uboxone, and he's in the latter stages of weaning himself from that."  (P. Tr. at 2.)  At that time, Granger was also being treated by two counselors.  (P. Tr. at 6.)  The attorney also said Granger had been in business with his father for 25 years refinishing furniture and had recently also been working as a flagger.  (P. Tr. at 2-3.) The government stated that Granger had been fully compliant with his bail conditions.  (P. Tr. at 4.)  Although Granger was subject to mandatory detention following the plea, neither the

government nor the probation office objected to releasing him on bail, and the court found exceptional circumstances based on his compliance with bail conditions thus far, his efforts and accomplishments in drug treatment, and his work at two jobs to provide for his wife and children as much as possible before sentencing.  (P. Tr. at 2-3, 20.)

At the sentencing hearing, the court found the facts as set forth in the PSI Report except that the court found a base offense level of 28 rather than 30.  Granger confirmed that he had read the PSI Report, discussed it with his attorney, and did not dispute it.  (S. Tr. at 4-5, 31.)  In summary, the report provides that Granger continued to be in full compliance with his bail conditions since his initial release.  His counselor stated that he had shown a sincere commitment to dealing with his addiction.  Granger reported that he experienced fatigue and pain around the time the report was completed, and he said that he had "never been the same" after the 2006 abdominal surgery.  His attorney noted that Granger had been "hijacked by the horrors of addiction."  (S. Tr. at 24.)

Granger's attorney introduced at sentencing supportive letters and notes in Granger's behalf from the following people: Granger's drug counselor, who submitted treatment notes and also testified that Granger was highly motivated in Alcoholics Anonymous, his drug screens had come back all negative, and he had an excellent prognosis as to motivation and attention to recovery; three of Granger's friends, one of whom was also a business associate; someone who rented part of Granger's shop; and several family members.  Ten persons appeared at the hearing in Granger's behalf, nine of whom testified.  These included many of the same people who had submitted letters.  His Alcoholics Anonymous sponsor was present but did not testify.  Granger spoke in his own behalf, and Granger's attorney argued that Granger "has done everything he

can from the minute he was arrested to deal with his sobriety." (S. Tr. at 23.) He said Granger had helped the government, and was "a very, very good candidate for leniency." (S. Tr. at 24.)

The government recommended a term of 28 to 34 months. (S. Tr. at 30.) The statutory maximum for this crime is 20 years, pursuant to 21 U.S.C. §841(b)(1)(C).

The court found that Granger met the criteria of the safety valve provision of the sentencing guidelines and gave him a two-level reduction, and an additional three-level reduction for accepting responsibility. From a base level of 28, the court found the total offense level to be 23 and the criminal history category to be Category I. This put the guideline range at 46 to 57 months of imprisonment. The court found that Granger was not eligible for probation, and supervised release would be from one to three years. The court found that Granger was unable to pay any fine, even with a reasonable installment schedule, and found that restitution was not an issue. Granger's attorney confirmed that there were no errors or omissions.

The court considered the sentencing factors under 18 U.S.C. § 3553(a) and granted the government's motion for a downward departure based on Granger's cooperation, but rejected the government's recommended 28 to 32 months in favor of a lower sentence of 24 months. (S. Tr. at 32, 35.) The reasons the court gave were the manner in which Granger's addiction arose, which was through a medical situation, his "extraordinary rehabilitation," and his acceptance of responsibility. (S. Tr. at 35-36.)

At sentencing, the court explained that Granger could appeal his sentence if he believed the plea agreement was unenforceable, and the court explained what he had to do to file an appeal. (S. Tr. at 40-41.) The court stated:

> The way that you do that is, first, you have to file with the clerk of this court, within 14 days from today, a written notice of appeal. If you fail to do that, you'll lose your right to appeal your sentence. If you want to try to appeal your sentence and cannot get your lawyer to file that notice, you can ask for the clerk of this

> court to file the notice for you and the clerk will do it, but it must be within the 14
> days. If you like, you can ask right now out loud here in the courtroom for the
> clerk to file that notice and the clerk will do it. If you cannot afford to pay the cost
> of taking appeal, you can ask permission to proceed without paying costs and if
> you qualify financially, you'll be permitted to do that.

(S. Tr. at 40-41.)  The court then asked Granger, "Do you understand all that I've just told you?" to which he replied, "Yes."  (S. Tr. at 41.)   Granger did not ask the clerk in open court to file an appeal at the conclusion of the sentencing hearing.

Granger filed his section 2255 motion and his reply under penalty of perjury.  (Motion at 8; Reply at 1, ECF No. 191.)  He asserts that he asked counsel to appeal.  (Motion at 12, 20.) Granger's motion does not provide any specifics about when he made the request, what the circumstances were, or what he said to the attorney.  Granger states in his motion, "I had instructed [counsel] to timely appeal my sentencing, he refused.  He wanted to get out of doing anything more in my case.  He was done and did not file an appeal."  (Motion at 12.)

The government has filed an affidavit signed by Granger's attorney.  The affidavit does not say anything about a conversation with Granger on the day of sentencing.  The attorney did state in the affidavit that he conferred with Granger twice after sentencing, before Granger self-reported for incarceration.  The attorney's affidavit states in pertinent part:

> 3.       After sentencing, I conferred with Granger two times before he self-
> reported to the MDC Brooklyn, New York on September 28, 2012.  One meeting
> occurred on September 7, 2012, and the other was on September 25, 2012.
>
> 4.       At no time after he was sentenced did Granger request that I file a notice
> of appeal in his behalf.

(Affidavit at 27, ECF No. 187-1.)  Although the attorney's affidavit does not address the appeal deadline, it appears that the September 7, 2012, meeting was within the 14-day appeal period specified in Rule 4(b), Rules of Appellate Procedure of the August 27, 2012, sentencing date, but the September 25, 2012, meeting occurred after the expiration of the appeal period.

Granger's reply does not directly respond to the assertions in the attorney's affidavit.

Instead, he adds only that he made the request on the day of sentencing:

> Petitioner requested that counsel . . . appeal, not to seek a reduction of the sentence but rather to obtain a greater portion of sentence time in home confinement so that proper diet and care issues could be addressed.  This request was made on the day of sentencing but [counsel] refused to act on the supposed ground that an appeal could make things much worse.

(Reply at 3.)

## LEGAL STANDARD

The applicable legal standard is set forth in 28 U.S.C. § 2255(a), which states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The First Circuit has interpreted the term "otherwise subject to collateral attack" to include "only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result[ ] in a complete miscarriage of justice' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'"  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

## DISCUSSION

### 1.   Claim of Ineffective Assistance

Granger's claim of ineffective assistance is governed by the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984).  See Glover v. United States, 531 U.S. 198, 203 (2001).  In order to prevail on a claim of ineffective assistance of counsel, a movant must show two things: first, that "counsel's representation 'fell below an objective standard of

reasonableness,'" Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (quoting Strickland, 466 U.S. at 688); and second, that there exists "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694). "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (citing Strickland, 466 U.S. at 697).

### a.  Failure to file an appeal

#### i.  Whether an evidentiary hearing is necessary to resolve a fact dispute concerning alleged deficient performance

I address this issue first because it involves the threshold issue whether Granger's sworn allegations concerning his request for an appeal are sufficient to generate a factual dispute that must be resolved through an evidentiary hearing.  See Martin v. United States, Nos: 1:07-cr-00017-JAW; 1:10-cv-00461-JAW, 2012 WL 2061934, at *3-6, 2012 U.S. Dist. Lexis 78989, at *8-15 (D. Me. June 7, 2012).  To the extent a petitioner's allegations about the request are directly contrary to those of his attorney, the petitioner's allegations must be credited for purposes of determining whether there is an issue of fact for hearing.  "Once the defendant alleges that her counsel failed to file a notice of appeal despite her request to do so, a court has 'no authority to credit petitioner's counsel's letter over petitioner's.'"  Martin, 2012 WL 2061934, at *4, 2012 U.S. Dist. Lexis 78989, at *9 (quoting Berrio-Callejas v. United States, No. 96-1524, 129 F.3d 1252 (1st Cir. Nov. 12, 1997) (unpublished).  Furthermore, the petitioner "'does not have to show that there are meritorious issues to be appealed.'"  Martin, 2012 WL 2061934, at *6, 2012 U.S. Dist. Lexis 78989, at *15 (quoting Bonneau v. United States, 961 F.2d 17, 23 (1st Cir. 1992)).

However, the court may forego an evidentiary hearing when "(1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." David, 134 F.3d at477 (quotation marks omitted).  "To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." Id. at 478; see also Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992) ("[A] petition is subject to dismissal, without an evidentiary hearing, if the grounds for relief either are not cognizable under section 2255 or amount to mere bald assertions without sufficiently particular and supportive allegations of fact.") (quotation marks omitted).  An evidentiary hearing on a section 2255 motion is "the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003).

Although it may at first appear that there is a factual dispute requiring a hearing to determine whether Granger asked his attorney to appeal, I conclude that Granger's allegations as to this claim are too general and non-responsive to satisfy his burden.  It was not until Granger's reply that he provided any detail at all about his request.  In his reply, he said he asked counsel on the day of sentencing, and the attorney refused to file an appeal on the basis that doing so "could make things much worse."  (Reply at 3.)  I have no reason not to credit Granger's statement as far as it goes, i.e., that he alleges that at some point on the day of sentencing, he asked his attorney about filing an appeal and the attorney refused.  What Granger does not provide, though, is any detail about when he had the conversation, whether it occurred before or after the end of the sentencing hearing, or whether the end result of the conversation was that he

expressed a desire to appeal.  His reply can only be interpreted to contradict the attorney's

statement if I infer that (1) Granger meant to say that he made the request to appeal on the day of

sentencing, but after the hearing was over, and (2) he expressed his request to appeal

notwithstanding the attorney's advice.  Because Granger does not provide these specifics, his

reply does not directly contradict the attorney's statement.  I conclude that he has not satisfied

his burden to demonstrate the need for a hearing.  See David, 134 F.3d at 477 ("Allegations that

are so evanescent or bereft of detail that they cannot reasonably be investigated (and, thus,

corroborated or disproved) do not warrant an evidentiary hearing.").

 Granger's situation is similar in some respects to that of the petitioner in United States v.

Tola, No. CR-09-083-ML, 2012 WL 1981852, at *5, 2012 U.S. Dist. Lexis 76204, at *15-18 (D.

R.I. June 1, 2012).  In Tola, the court addressed whether a hearing was needed to determine

whether the petitioner asked the attorney to file a direct appeal following a guilty plea, where the

plea agreement contained a waiver of the right of appeal.  The petitioner stated that he asked his

attorney to file an appeal, and that request took place just after sentencing, but before they left

the courtroom.  The attorney stated that he met with the petitioner in his cellblock after the

hearing and told the petitioner that there was no viable issue for appeal, and the petitioner

"indicated that he would not seek to file an appeal."  2012 WL 1981852, at *5, 2012 U.S. Dist.

Lexis 76204, at *18.  The court noted that the petitioner was silent as to the cellblock

conversations, and concluded on that basis that the attorney did discuss with the petitioner

whether to appeal and that this resulted in a mutual understanding that there would be no appeal.

Id.  There is no reason not to treat Granger's response to the attorney's affidavit about the two

post-sentencing meetings as the court did the petitioner's allegations in Tola.  In other words, I

credit Granger's allegation that on the day of sentencing he discussed the issue of an appeal with

his attorney, but I reject as insufficient Granger's vague and implied allegation that at the end of the conversation there remained his expressed wish to file an appeal.  See id.

Granger also asserts a failure to consult.  (Motion at 20.)  In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court stated that it employs "the term 'consult' to convey specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  Id. at 478.  Based on my review of the facts alleged, I conclude that Granger does not assert a claim of failure to consult independently of his claim of failure to file a notice of appeal.  Granger does not assert that he would not have entered into the plea agreement if he had received a proper consultation, or that he would have decided anything differently had he been better informed of his options.  Because he does not challenge the plea agreement, I conclude that he does not challenge the consultation regarding the plea agreement.  Rather, his claim of failure to consult is limited to the facts he alleges in support of his claim of failure to file a notice of appeal.  As explained above, Granger's allegations are insufficient.

Granger's allegation about the request for an appeal fails for an additional reason. Granger's stated reason for appealing was ultimately to offer more information to the court about his medical condition because he thought this would persuade the court to lessen his prison term even more than it did, or eliminate the prison term altogether in favor of home confinement.[4]  To credit this as Granger's reason for appealing requires the court to accept that Granger did not know about the missing information during the hearing but found out about it later on that same

---

[4]      Granger is not required to provide a meritorious reason for his appeal in order to get to an evidentiary hearing to resolve whether he asked his attorney to file a notice of appeal.  See Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit.") (quoting Peguero v. United States, 526 U.S. 23, 28 (1999)).  I mention Granger's stated reason for appealing not to assess its merit but rather because it sheds light on his allegations for the purpose of determining whether a hearing is necessary.

day and immediately contacted his attorney to request an appeal.  Granger does not make any

such allegation.  Granger's factual allegations in support of his claim that counsel was

constitutionally ineffective for failure to file an appeal are insufficient to warrant an evidentiary

hearing.

### ii.        Whether Granger can demonstrate prejudice

If the court determines that a hearing is not necessary because Granger's allegations, even

if true, do not establish that the attorney failed to follow his instruction to file a notice of appeal,

this determination also leads to the conclusion that Granger has failed to state a claim for

deficient performance, and the court need not address the issue of prejudice.  See Strickland, 466

U.S. at 697; Tevlin, 621 F.3d at 66.  On the other hand, if the court holds that Granger cannot

demonstrate prejudice, that too would constitute an independent ground for dismissal of the

claim.  See id.

In Roe, the Supreme Court held that an attorney's failure to file a notice of appeal, after

receiving a request by the client to file the notice, constitutes deficient performance, and the

court presumes that the defendant has been prejudiced "when counsel's constitutionally deficient

performance deprives a defendant of an appeal that he otherwise would have taken . . . ."  528

U.S. at 477, 484.  Concerning deficient performance, the Court held:

> Counsel's failure to [file a requested appeal] cannot be considered a strategic
> decision; filing a notice of appeal is a purely ministerial task, and the failure to
> file reflects inattention to the defendant's wishes.  At the other end of the
> spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly
> cannot later complain that, by following his instructions, his counsel performed
> deficiently.

Id. at 477.  Although the Supreme Court in Roe analyzed the issue of prejudice in terms of a

presumption, this was not a burden-shifting presumption that could be overcome, but rather one

that required "no further showing from the defendant of the merits of his underlying claims when

the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." Roe, 528 U.S. at 484.

Roe is distinguishable because it was not a case in which the defendant had waived his right to appeal.  528 U.S. at 488 n.1 (Souter, J., concurring in part, dissenting in part) (noting that there was no assertion that the defendant waived his right to appeal).  Neither the Supreme Court nor the First Circuit has yet decided whether the attorney's failure to file a requested appeal, notwithstanding a valid waiver of appeal, constitutes deficient performance and gives rise to a presumption of prejudice.  There is a split of authority among the circuits on this issue.  See Nunez v. United States, 546 F.3d 450, 452 (7th Cir. 2008) (rejecting the proposition that "the defendant has a constitutional right to have a lawyer file a notice of appeal on his behalf even after formally waiving that right" and collecting cases); Agosto v. United States, Nos. 04-cr-10336-NMG-5, 09-cv-11610-NMG, 2012 WL 3518130, at *11-12 (D. Mass. Aug. 15, 2012) (collecting cases).[5]

Several circuits have held that the attorney must file an appeal when requested, even if the defendant has entered into a plea agreement waiving the right to appeal.  See, e.g., United States v. Poindexter, 492 F.3d 263 (4th Cir. 2007).  In Poindexter, which involved a waiver of the right to appeal the conviction or the sentence, the court held that the Supreme Court's decision in Roe, although not directly on point, nevertheless compelled the determination the attorney has a duty to follow an instruction to file an appeal even when there is a waiver of appeal and the defendant obtains "little more than an opportunity to lose at a later date."  Id. at

---

[5]      Agosto v. United States, Nos. 04-cr-10336-NMG-5, 09-cv-11610-NMG, 2012 WL 3518130, at *11-12 (D. Mass. Aug. 15, 2012), also appears in the Lexis database although with a different date of decision and without the United States Magistrate's report and recommendation attached.  2012 U.S. Dist. Lexis 103868 (D. Mass July 25, 2012).

269, 273 (collecting cases); see also Campusano v. United States, 442 F.3d 770 (2d Cir. 2006).

In Campusano, the court noted:

> There will not be many cases in which a defendant whose attorney fails to file a
> notice of appeal after a plea agreement and a waiver of appeal, and whose
> hypothetical appeal seems meritless during ineffective-assistance habeas review,
> eventually prevails.  But rare as they might be, such cases are not inconceivable,
> and we do not cut corners when Sixth Amendment rights are at stake.

Campusano, 442 F.3d at 777.  In Poindexter, the court explicitly recognized the downside risk to

the defendant of its ruling:  "In sum, we hold that an attorney is required to file a notice of appeal

when unequivocally instructed to do so by his client, even if doing so would be contrary to the

plea agreement and harmful to the client's interests."  492 F.3d at 273.  In contrast to these cases,

the court in United States v. Mabry, 536 F.3d 231 (3d Cir. 2008), rejected the analysis in the

Campusano line of cases as "not well-reasoned" because they "disregard the precise issue before

them, and us: namely, the validity of the waiver."  Id. at 242.

  I am persuaded for two reasons that the reasoning of Mabry and Nunez is sounder, at

least as applied to the facts presented by Granger's motion.  First, the nature of the attorney's

duty should be different when there is a valid waiver of appeal compared with when there is not.

See Nunez, 546 F.3d at 453-56.  The court in Nunez reasoned that the Supreme Court in Roe, in

holding that filing a notice of appeal is a ministerial duty, "concludes that failure to appeal is a

form of not showing up for duty.  But . . . when a defendant not only pleads guilty but also

waives the right to appeal, it is hard to classify the absence of appeal as the lawyer taking a

vacation."  Nunez, 546 F.3d at 454.  "Filing an appeal is not 'ministerial' when the defendant has

waived that entitlement.  Waivers are enforced even if a defendant changes his mind."  Id.  In

Mabry, the court determined that "the right to appeal that has been waived stands on a different

footing from a preserved right to appeal, both conceptually and in relation to counsel's duty to

his client with respect thereto.  This distinction has been ignored by those courts of appeals

adhering to Campusano's analysis."  Mabry, 536 F.3d at 242 (footnote omitted).  "With the

waiver in force, counsel's duty to protect his client's interests militates against filing an appeal,"

because "the prosecutor may withdraw concessions made as part of the bargain."  Nunez, 546

F.3d at 455.  A lawyer has a "duty to his client to avoid taking steps that will cost the client the

benefit of the plea bargain."  Id.

 Second, Granger does not wish to challenge the voluntariness of the plea agreement, and

so he has no basis for filing an appeal.  "A criminal defendant may waive his right to appeal as

long as his waiver is voluntary and made with knowledge of the consequences of the waiver."

United States v. Ríos-Hernández, 645 F.3d 456, 461 (1st Cir. 2011).  Granger makes no claim

that his plea was not knowing and voluntary, and he seeks no finding to that effect.  Nor does he

challenge the plea agreement, or the appeal waiver provision in particular, on any other basis.

Again, Nunez is apposite:

> A lawyer might have a responsibility to file an appeal if the client indicated a
> desire to withdraw the plea, for that amounts to a declaration by the defendant of
> willingness to give up the plea's benefits, and withdrawal would abrogate the
> waiver too; but Nunez (who had not asked the district judge to set aside the plea)
> does not contend that he told his lawyer that he had any desire to achieve that goal
> by an appeal.

Nunez, 546 F.3d at 455.  Likewise, Granger has alleged no facts or claims that enable him to

appeal.  Because Granger's waiver of appeal covered the issue he wished to pursue—his

sentencing—and he did not allege a lack of voluntariness of the plea agreement, "it should be

readily apparent that this claim would not succeed in the unique fact pattern presented here . . . ."

See Mabry, 536 F.3d at 243 n.16.

 In this case, I conclude that enforcement of the waiver would not result in a miscarriage

of justice.  Id. at  243.  The court in Mabry noted and followed the First Circuit's analysis in

United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001) to determine whether a miscarriage of justice would occur if the waiver were enforced.  Mabry, 536 F.3d at 242-43.  The First Circuit noted that

> "miscarriage of justice" is more a concept than a constant.  Nevertheless, some of the considerations come readily to mind: the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Teeter, 257 F.3d at 26.

> Once a defendant has waived his right to appeal not only in writing but also in open court under [Fed. R. Crim. P.] 11(b)(1)(N), the sixth amendment does not require counsel to disregard the waiver.  The regimen of Strickland applies: the defendant must show both objectively deficient performance and prejudice.  Unless a non-frivolous issue could be raised on appeal, counsel should protect the client's interest in retaining the benefit of the plea bargain.  To the extent that other circuits disable counsel from making such a professional judgment, we disagree with them.

Nunez, 546 F.3d at 456.  Because I conclude that Granger has not asserted any basis for challenging the waiver, I recommend that the court determine that he has failed to demonstrate prejudice.

### b.  Medical records that were not before the court at sentencing

Granger argues that counsel was ineffective because he did not review and offer at sentencing a computer disc of medical and psychological records that Granger had provided him. (Motion at 11.)  Granger attached medical records to his motion and argues that his attorney did not inform the court that he was totally disabled, that he was in acute pain, and that his behavior was out of his control due to the addiction.  Granger argues that his medical condition constituted an extraordinary physical impairment sufficient to warrant a downward departure to home detention rather than imprisonment, pursuant to the USSG § 5H1.4, and his psychological

condition warranted a downward departure for diminished mental capacity due to pain, pursuant to USSG 5K2.13.  (Motion at 21-22.)  He thought he should have been tested to determine whether the downward departure for diminished capacity was warranted.  (Motion at 23.)  The government argues that Granger's attorney did not provide ineffective assistance of counsel, but rather counsel argued vigorously for Granger, and the information that Granger argues his attorney failed to present was in the PSI Report that the court had and reviewed.  In Granger's reply, he argues that although the court had some of the facts through the PSI Report, it did not have "all the facts."  (Reply at 1, ECF No. 191.)

Although the court may not have had the medical and psychological records that Granger wanted it to have, the court was aware that he was disabled because there are references to Social Security disability income in the PSI Report.  The PSI Report also makes note—in several places—of Granger's chronic pain from both an automobile accident and abdominal surgery that he had in 2006 and 2007 as a result of a serious case of diverticulitis.  As for Granger's argument that counsel was ineffective for failing to argue that Granger's behavior was out of control, counsel did argue that at the time Granger committed the crime, he was overcome by the addiction.  (S. Tr. at 24.)

I recommend that the court not reach the issue whether the attorney's failure fell below an objective standard of reasonableness because Granger has not satisfied the "prejudice" prong of Strickland.  See Tevlin, 621 F.3d at 66 (citing Strickland, 466 U.S. at 697).  Even if the court had had the medical records before it that Granger claims his attorney should have reviewed and provided to the court, Granger has not demonstrated a reasonable probability that the outcome would have been different.  Granger does not allege that he would not have entered into the plea agreement; rather, the different outcome he sought was either a shorter prison term or home

confinement based on his medical needs.  There is not a reasonable probability of either of those outcomes, given that the court already had taken all of the same basic medical information into account in arriving at the sentence.  The PSI Report discussed all of the underlying medical and psychological conditions raised in Granger's section 2255 motion, including the serious case of diverticulitis, the two major operations, and the chronic pain.  The court stated that it considered the PSI Report.  I cannot conclude that there is a reasonable probability that additional medical records containing essentially the same information, but with greater medical detail, would have altered the outcome of sentencing.

### c.  Addiction-driven conduct as basis for further downward departure

Granger argues that counsel was ineffective for failing to emphasize that Granger's criminal behavior was motivated by his addiction.  Ultimately, it was Granger's sincere acceptance of responsibility for that behavior that persuaded the court that a three-level reduction under the sentencing guidelines was appropriate.  Counsel's decision to simply mention that Granger was strongly affected by his addiction, but to lay emphasis on his acceptance of responsibility, was a winning strategy for Granger.  Granger would not have obtained a downward departure without stressing his acceptance of responsibility.  Granger has not met either prong of Strickland with this argument; his attorney did not fall below an objective standard of reasonableness, and there was no prejudice caused by the attorney's decision not to emphasize that Granger's addiction was the reason for the crime.

### d.  Additional positive character references that were not before the court

Granger attaches a number of reference letters to his motion.  (Attachment to Motion, ECF No. 166-3.)  Many of these references—which, if they were not the exact same letters as attached to the section 2255 motion, were at least written by the same persons—were already

before the court at sentencing.  (S. Tr. at 2.)  The court listed the persons who had written letters

of support.  That list includes the same names as filed by Granger with his motion, except that

Granger's motion adds letters from two additional therapists, a couple who owned a business,

and a nephew of Granger.  Granger does not make any argument in his motion as to why counsel

was ineffective for not submitting the additional letters, nor does he make any argument as to

what additional information those letters would have provided to the court.  I conclude that

Granger has not met either prong of <u>Strickland</u> with respect to any argument he may have

intended by attaching the reference letters to his motion.

### 2.  Claims Regarding Prison Conditions

Granger states that he experiences significant and unbearable anxiety about his mental

and physical health in prison, he has a serious medical condition that is being neglected, and his

treatment amounts to cruel and unusual punishment in violation of the Eighth Amendment to the

United States Constitution.  (Motion at 21.)  He presents this argument as a cognizable but, as I

explained above, unsupported and unpersuasive habeas argument that counsel's ineffective

assistance resulted in a longer term of imprisonment than he would have received if counsel had

submitted Granger's medical records.  If Granger is also attempting to bring a claim concerning

prison conditions independent of his claim to be released from prison, the prison condition claim

may not be brought pursuant to section 2255.  <u>See</u> <u>Rogers v. United States</u>, 180 F.3d 349, 357

n.15 (1st Cir. 1999) ("When an action addresses the execution of a sentence by prison or

administrative officials, rather than the validity of the sentence, § 2255 relief is unavailable.")

Claims concerning alleged inadequate medical care in prison relate to the execution of the

sentence rather than its validity, and such claims therefore would have to be brought, if at all,

pursuant to 28 U.S.C. §2241.  <u>See</u> <u>United States v. Barrett</u>, 178 F.3d 34, 50 n.10 (1st Cir. 1999)

20

(citing, inter alia, United States v. DiRusso, 535 F.2d 673, 674-76 (1st Cir. 1976) ("Section 2255 . . . does not grant jurisdiction over a post-conviction claim attacking the execution, rather than the imposition or illegality of the sentence . . . .  The proper vehicle for attacking the execution of [the] sentence . . . is 28 U.S.C. § 2241.")).  I think it is clear that Granger seeks to challenge the legality of the sentence itself and seeks to have the sentence reduced.  But if he seeks to challenge the medical care he is receiving while in prison, that claim must be filed pursuant to another legal vehicle and must be brought in the jurisdiction where he is incarcerated.

## CONCLUSION

For the reasons stated above I recommend that the court deny Granger's motion.  I recommend that the denial be with prejudice as to the ineffective assistance claims but without prejudice as to the prison condition claims.  I recommend that the court deny a certificate of appealability because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

September 4, 2013                          /s/Margaret J. Kravchuk
                                           U.S. Magistrate Judge